Exhibit A

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

In re:

GEOFFREY EDELSTEN,

      Debtor.

_____/

Case No.: 14-19613-JKO
Chapter 7

### SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter the "Settlement Agreement") is made this January __, 2018, and is entered into by and between Soneet Kapila, the Chapter 7 Trustee Kapila ("Trustee Kapila") for the Chapter 7 bankruptcy estate and ("Estate") of Geoffrey Edelsten ("Debtor"); and National Australia Bank Limited ("NAB"). Trustee Kapila and NAB are sometimes collectively referred to as "Parties" or separately as "Party."

WHEREAS, on January 9, 2014 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Ohio ("Ohio Bankruptcy Court");[1]

WHEREAS, on April 11, 2014, Ohio Bankruptcy Court entered an order transferring the venue to the United States Bankruptcy Court for the Southern District of Florida ("Bankruptcy Court"), and the case was docketed as *In re Geoffrey Edelsten*, Case No. 14-19613 ("Main Case");

WHEREAS, NAB is (i) party to a contested matter in the Main Case adverse to Trustee Kapila, in which Trustee Kapila claims NAB violated the automatic stay under 11 U.S.C. § 362 [ECF No. 593] ("Contested Matter"), which is presently on appeal to the District Court, Case No. 17-61609-WPD ("Appeal"); (ii) the defendant in Adversary

---

[1] On the Petition Date an entity controlled by the Debtor, N770GE, LLC, also filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in Ohio Bankruptcy Court. That case has been jointly administered and consolidated with the Debtor's case.



Proceeding No. 15-01265-JKO ("Adversary Proceeding"); (iii) the claimant in Proof of Claim No. 17 filed in the Main Case ("Claim"); and a party in interest in related ancillary proceedings in the Federal Court of Australia ("Australian Proceedings");

WHEREAS, on October 24, 2016, relating to the Contested Matter, the Bankruptcy Court entered the *Order Granting in Part Motion for Turnover of Property,* which was amended [ECF No. 790, 833, 836] ("Partial Turnover Order"), pursuant to which Trustee Kapila, on behalf of the Estate, received $785,040.65 USD ("Turnover Proceeds");

WHEREAS, on July 27, 2017, relating to the Contested Matter, the Bankruptcy Court entered the *Order Granting Chapter 7 Trustee's Motion for Turnover and Sanctions for Violation of the Automatic Stay* [ECF No. 879] ("Turnover/Sanctions Order"), which found that NAB violated the automatic stay, awarded Trustee Kapila, on behalf of the Debtor's Estate sanctions against NAB, and directed Trustee Kapila to file a notice setting forth the proposed amount of sanctions;

WHEREAS, on August 10, 2017, pursuant to the Turnover/Sanctions Order, Trustee Kapila filed his *Notice of Filing Accounting of Attorneys' Fees and Costs Related to the Motion for Turnover and Sanctions* [ECF No. 883] ("Sanctions Accounting"), in which Trustee Kapila requested the Bankruptcy Court award $160,801.00 USD and $180,294.66 AUD in attorneys' fees against NAB as the sanction;

WHEREAS, on August 24, 2017, NAB filed its *Response to Trustee Kapila's Notice of Filing Accounting of Attorneys' Fees and Costs Related to the Motion for Turnover and Sanctions,* in which NAB requested the Bankruptcy Court deny all relief requested by Trustee Kapila in the Sanctions Accounting and grant such other and further relief as the Court deems just proper both at law and in equity;

WHEREAS, NAB disputes Trustee Kapila's claims: (i) in the Contested Matter, and therefore it filed the Appeal; and (ii) the Adversary Proceeding; and Trustee Kapila disputes the validity of NAB's Claim; and

WHEREAS, in order to avoid the high costs and uncertainties of litigation, the Parties, without admitting any fault or liability whatsoever to one another, desire to settle the Contested Matter, which includes the issues relating to the Turnover Proceeds and the Sanctions Accounting, the Appeal, the Adversary Proceeding, the Claim, and the Australian Proceeding amicably, and the Parties have participated in good-faith settlement negotiations, ultimately reaching a settlement, the terms of which they now have set forth in this Settlement Agreement.

NOW, THEREFORE, in consideration of the premises aforesaid and the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby stipulate and agree ("Compromise") as follows:

1.    Recitals Incorporated.  The recitals and prefatory phrases and paragraphs set forth above are true, accurate and correct, and are incorporated in full and made a part of this Settlement Agreement.

2.    Denial of Liability.  The Parties agree that this Settlement Agreement is a compromise and settlement of any and all claims each Party possesses, may possess or possessed against the other Party, including without limitation, any and all claims arising from or relating to the Main Case, the Contested Matter and related Appeal, the Adversary Proceedings, the Claim, the Australian Proceeding, the Debtor, and the Estate, and none of the Parties admits, and each expressly denies, any liability on its part, except as may expressly be set forth herein.

3.    Compromise.

(a) No later than seven days after the order approving this Settlement Agreement becomes final and non-appealable, NAB will pay to Trustee Kapila for the benefit of the Estate the sum of $900,000 USD (plus any telegraphic transfer costs which NAB will bear) ("Settlement Payment") by telegraphic transfer to the bank account notified by Trustee Kapila to NAB;

(b) No later than seven days after the order approving this Settlement Agreement becomes final and non-appealable, NAB will withdraw the Claim, waive any further claims, right, title or interest in the Turnover Proceeds in the amount of the $785,040.65 USD, and waive any claims under 11 U.S.C. § 502(h);

(c) No later than seven days after the order approving this Settlement Agreement becomes final and non-appealable, NAB will dismiss the Appeal, of which the Parties agree to seek abatement pending approval of the Settlement Agreement;

(d) No later than seven days after the order approving this Settlement Agreement becomes final and non-appealable, Trustee Kapila will dismiss, *with prejudice*, the Adversary Proceeding, of which the Parties agree to seek abatement pending approval of the Settlement Agreement;

(e) No later than seven days after the order approving this Settlement Agreement becomes final and non-appealable, Trustee Kapila will waive any award of sanctions or attorneys' fees in connection with the Contested Matter, including the amounts sought in the Sanctions Accounting.

(f) Each party will bear its own attorneys' fees and costs in the Main Case, the Contested Matter, the Appeal, the Adversary Proceeding, the Claim, the Australian Proceedings and any other matter between the Parties arising from or related to the Debtor and the Estate.

4.    Mutual Releases.  Effective upon the Bankruptcy Court's order approving this Settlement Agreement becoming a final order, and upon the Parties effectuating the provisions of the Compromise set forth in paragraph 3 above, the Parties forever remise, release, acquit, satisfy, and forever discharge one another, including their respective officers, directors, employees, agents, attorneys, appointors, and members of and from all manner of actions, causes of action, suits, debts, covenants, contracts, controversies, agreements, promises, claims and demands whatsoever, which the Parties ever had or now have against one another, or which any personal representative, successor, heir or

assign of the Parties hereafter can, shall or may have, by reason of any matter, cause or thing whatsoever, whether known or unknown, from the beginning of time to the date of this Settlement Agreement, arising out of or related to the Main Case, the Contested Matter, the Appeal, the Adversary Proceeding, the Claim, 11 U.S.C. § 502(h), the Australian Proceedings, and any other matter between the Parties arising from or related to the Debtor and the Estate, with all parties to bear their own costs and expenses.  In providing the mutual releases under this paragraph, each of the Parties acknowledges that they are aware they may discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this Settlement Agreement, but that it is their intention to, and they do, fully and finally settle any and all claims arising from or relating to the subject matter of this Settlement Agreement on the terms contained herein.    This paragraph, however, shall not operate or be construed to operate as a release or discharge of any of the obligations under this Settlement Agreement, and does not contemplate any third-party beneficiaries; failure to perform the conditions and covenants herein shall nullify the release to the non-performing Party.

     5.    <u>Bankruptcy Court Approval and Effect of Settlement Agreement</u>.  This Settlement Agreement, and the releases contained herein, shall not be effective until the Bankruptcy Court approves this Settlement Agreement.  Upon the Bankruptcy Court's order of approval becoming a final order, this Settlement Agreement, including the releases contained herein, is effective and binding on the Parties hereto, the Estate, its creditors, interested parties, parties in interest, noticed parties, meaning any party that has requested and/or received notice in the Main Case, estate fiduciaries, including, without limitation, any Chapter 7 and/or 11 trustee, present and former affiliates, parents, subsidiaries, predecessors in interest, successors in interest and all respective officers, directors, managers, members, agents, employees, attorneys, advisors, heirs and assignees.  Trustee Kapila will seek



approval of the Settlement Agreement by filing a motion pursuant to Bankruptcy Rule 9019 not later than seven days after full execution of the Settlement Agreement. The motion will be scheduled for hearing on thirty days' notice. Should the Court not approve the terms of this Settlement Agreement, the Settlement Agreement is null and void and shall have no force or effect and shall not be enforceable by or against the Parties hereto and the Parties shall be restored to their prior position without any prejudice.

6.    <u>Binding Effect.</u>  This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns, including, but not limited to, any successor trustee of the Estate (or any successor trustee appointed by the Bankruptcy Court).

7.    Bar to proceedings.  Each of the Parties may plead this Settlement Agreement as a complete defense to any action, causes of action or suits which may be taken or commenced against them by another Party arising from or relating to the subject matter of this Settlement Agreement consistent with the releases contained in this Settlement Agreement.

8.    <u>Entire Agreement.</u>  This Settlement Agreement constitutes the entire agreement of the Parties hereto as to the subject matter hereof.  The undersigned acknowledge that there are no communications or oral understandings contrary, different, or that in any way restrict this Settlement Agreement, and that all prior agreements or understandings within the scope of the subject matter of this Settlement Agreement are, upon the execution and delivery of this Settlement Agreement, superseded, null and void.

9.    <u>Amendments.</u>  No waiver, modification or amendment of the terms of this Settlement Agreement shall be valid or binding unless made in writing, signed by the Party to be charged and then only to the extent as set forth in such written waiver, modification, or amendment.



10.    <u>Counter-Parts.</u> The Parties may execute this Settlement Agreement in whole or counterparts, and execution of counterparts shall have the same force and effect as if the parties had signed the same instrument.  Signatures transmitted electronically or by facsimile shall have the same effect as original signatures.

11.    <u>Neutral Interpretation.</u> In the event any dispute arises among the Parties with regard to the interpretation of any term of this Settlement Agreement, all of the Parties shall be considered collectively to be the drafting party and any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall be inapplicable.

12.    <u>Authority.</u> Each Party to this Settlement Agreement warrants and represents that the person signing this Settlement Agreement on its behalf is duly authorized to enter into this Settlement Agreement on behalf of such party.  Each Party signing this Settlement Agreement separately acknowledges and represents that this representation and warranty is an essential and material provision of this Settlement Agreement and shall survive execution of this Settlement Agreement.

13.    <u>Illegality.</u> If any clause, provision, or paragraph of this Settlement Agreement shall, for any reason, be held illegal, invalid, or unenforceable, such illegality, invalidity, or enforceability shall not affect any other clause, provision, or paragraph of this Settlement Agreement, and this Settlement Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable clause, paragraph, or other provision had not been contained herein, except if the release granted by the Parties to this Settlement Agreement is deemed to be unenforceable, illegal, or invalid, then the release granted by the Trustee Kapila herein shall be of no force and effect, and any monies that may have been delivered to the Trustee Kapila pursuant to the settlement referenced herein shall be returned to the Parties' respective counsel forthwith.

14.    <u>Advice of Counsel.</u> The Parties acknowledge that they have been represented

by counsel of their own choice in the negotiations leading up to the execution of this Settlement Agreement and that they have read this Settlement Agreement and have had the opportunity to receive an explanation from legal counsel regarding the legal nature and effect of the same, and each Party has had it fully explained to them by their counsel and understands the terms and provisions of this Settlement Agreement and its nature and effect. Each Party further represents that they are entering into this Settlement Agreement freely and voluntarily, with the Parties each relying upon their own business judgment and the advice of their own counsel, and not relying on the representation of any other Party or of counsel for any other Party.

15.    Bankruptcy Court Retention of Jurisdiction/Enforcement. The Parties shall request that the Court retain jurisdiction to interpret and enforce all the terms of this Settlement Agreement. The Parties shall consent to the jurisdiction of the Court in any action, including an adversary proceeding or other proceeding, brought to enforce the terms of this Settlement Agreement. The prevailing party in any such proceeding shall be entitled to receive his/her/its reasonable attorneys' fees and costs from the non-prevailing party. Such retention of jurisdiction shall be requested to be memorialized in the Order approving this Settlement Agreement.

16.    Acknowledgement. This Settlement Agreement was executed after arm's length negotiations between the Parties and their respective counsel, and reflects the conclusion of the Parties that this Settlement Agreement is in the best interests of each of the Parties' respective positions.

17.    Divisions and Headings. The divisions of this Settlement Agreement into sections and subsections and the use of captions and headings in connection therewith are solely for convenience and shall have no legal effect in construing the provisions of this Settlement Agreement.



IN WITNESS HEREOF, the undersigned, being duly authorized, have caused this Settlement Agreement to be executed as of the date shown above.

_Soneet Kapila_
SONEET KAPILA, as Trustee for the bankruptcy estate of Geoffrey Edelsten

| | |
|---|---|
| **Executed** for and on behalf of **NATIONAL AUSTRALIA BANK LIMITED ABN 12 004 044 937** under Power of Attorney dated 2 March 2007 and registered in Victoria Permanent Order Book Number 277 at Page 025 Item 35 by Mark Hochuli who certifies that he is an Executive, Strategic Business Services Vic/Tas, and that he has not received notice of revocation of that Power in the presence of: | by its attorney: |

Signature of Witness                          Signature of Mark Hochuli

JANE MARTINI
Full Name (BLOCK LETTERS)

27/500 BOURKE ST MELBOURNE
Address of Witness